KEVIN K. COLEMAN *et al. vs.* BOARD OF CANVASSERS AND REGISTRATION OF THE CITY OF WOONSOCKET.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

OCTOBER 31, 1952.

PRESENT: Flynn, C. J.; Capotosto, Baker, Condon and O'Connell, JJ.

PER CURIAM. These five petitions for mandamus were brought to compel the respondents to certify to the secretary of state the nominations of petitioners as candidates on final nomination papers for certain offices as therein set forth to be voted upon at the election to be held in the city of Woonsocket on November 4, 1952.

Kevin K. Coleman as candidate for mayor and Gustave A. LaBreche as candidate for police commissioner of said city are petitioners in all five petitions. Each of the other petitioners is a candidate respectively for alderman or councilman in a particular ward and appears only in the petition relating to his ward. The named respondents constitute all the members of the board of canvassers and registration of the city of Woonsocket.

The respondents appeared in response to a show cause citation issued by this court October 9, 1952 and made returnable Friday, October 10. At the outset they requested a continuance to permit them to introduce evidence in order to refute the allegations in the petitions. However, it appeared from statements in open court made by counsel for the parties that petitioners had filed with respondents

as the board of canvassers and registration certain final nomination papers under the political principle "Independent" and that such board, after a public hearing at which petitioners were present and represented, rejected the proposed nominations on the ground that each lacked a sufficient number of valid signatures of qualified electors under general laws 1938, chapter 317, as amended. But it also appeared that the parties were in dispute as to the precise nature and extent of the board's oral decision in rejecting such nominations.

The petitioners contend that the nominations were rejected by respondents on the *single* ground that a large number of electors whose signatures appeared on the nomination papers had signed similar "Independent" nomination papers in 1950; that these disqualifications were contrary to law; and that if they were added to the other valid signatures the total would exceed the minimum required by law. The respondents on the other hand admit that they rejected said nomination papers on that ground but also assert that they reserved the right to reject them on the further ground that some of the signatures thus disqualified might also be invalid for other reasons which were indicated to petitioners, who at the time appeared to be interested only in the first ground of disqualification. A material issue, therefore, is based on disputed facts.

In this connection, however, it was represented to the court that our decision would have to be made before October 14 in order to permit the secretary of state to perform his duty under the law in preparing and mailing soldier and absentee ballots. Since the next earliest hearing date of the court would be October 15, it was clear that a continuance would have the effect of preventing a timely decision. The petitioners then offered expressly to rest the cases on respondents' present statement of facts concerning their rejection of the nominations and on the law applicable thereto. This offer was acceptable to respondents and accordingly the cases were presented and

argued on the narrow issue of law hereinafter set forth, all other questions of fact and law being expressly waived.

The attorney for respondents conceded before us that the board had misinterpreted or misapplied the law in rejecting a certain number of signatures appearing on these nomination papers merely because such electors had signed similar "Independent" nomination papers in 1950. It is admitted that such names legally should not have been disqualified on that ground and that, if they are added to the other valid signatures, the petitioners Kevin K. Coleman as candidate for mayor and Gustave A. LaBreche as candidate for police commissioner are entitled to have their final nominations certified to the secretary of state under the political principle "Independent."

A similar error and result are admitted in connection with the candidates for alderman and councilmen appearing on the nomination papers for ward 2. Therefore such candidates also are entitled to have their nominations certified to the secretary of state under the same political principle "Independent."

On the other hand it was conceded by counsel for petitioners that the circumstances required that the cases be presented on a narrow issue of law in order to obtain an immediate decision, and that as thus restricted the candidates on nomination papers for alderman and councilmen in ward 3 would not have sufficient names to qualify them for certification. For that reason such petition was expressly waived or withdrawn by petitioners.

The other petitions relating to the named candidates for alderman and councilmen respectively in wards 1, 4 and 5 were left to be determined by this court upon the single question of law as agreed to by the parties, namely, whether it was error to reject certain signatures of otherwise qualified electors solely because of the respondents' conclusion that the addresses of such electors on the final nomination papers appeared to have been added by another person.

Before considering such question, however, it was shown

from the record that the board had made no disqualification of any signature on that ground in the case of the nomination papers presented from ward 4. Such nominations apparently were rejected for other reasons which in the circumstances have been expressly waived by petitioners. Therefore the petition as to the nominations for alderman and councilmen in ward 4 must be denied.

In the cases of wards 1 and 5, however, the board had disqualified, on the ground that another had added the addresses, enough signatures to bring the total number of valid signatures on the papers below the minimum required by the election law. Consequently, if the respondents' interpretation of the law is not sustained the nominations for alderman and councilmen in wards 1 and 5 respectively are entitled to be certified in accordance with the prayers of the petitioners.

In the circumstances the answer to the controlling question of law is to be determined upon a construction of G. L. 1938, chap. 317, §11, as amended by public laws 1947, chap. 1886, and by P. L. 1948, chap. 2100, which reads in part as follows:

> "Each voter signing a nomination paper shall add to his signature his place of residence, and each voter may subscribe to one nomination for each office to be filled and no more. Any voter signing any such nomination paper is thereafter disqualified from participation in the primary of any political party for the succeeding 26 months, as heretofore provided in section 23 of the act creating a 'direct primary system.'"

The respondents contend that under such provisions an elector must not only sign his name but that he must *personally* "add to his signature his place of residence"; that this provision is mandatory; and that thereunder the respondents properly rejected a sufficient number of names to disqualify the nominations in wards 1 and 5 solely on their conclusion that a person other than the elector had added the elector's place of residence.

It is conceded by the respondents that the signature of

each elector in question was validly subscribed by the elector himself and that each actually resided at the place indicated as his residence. There is no claim that there was any fraud, confusion, or other fact which would tend to mislead the members of the board as to the identification of the particular electors. Their argument is rested entirely on a literal construction of the statutory language which they claim requires every elector personally to subscribe not only his name but also his place of residence in order to comply with the law.

No case or precedent going that far has been cited by respondents and we have found none. The case of *Attorney-General ex rel. Cannon* v. *Clarke*, 26 R. I. 470, obviously concerns only the *subscribing* of one's name and does not deal at all with the provision that he shall *add* his place of residence. Moreover the respondents have offered no reason beyond the purpose of identifying the elector which might have prompted the legislature to make the requirement or to support the strict construction advocated by them.

In the limited time available to us for research on the question and in the absence of contrary precedent coming to our attention, we have concluded that the respondents' interpretation of that provision is unnecessarily strict and harsh. The language literally may permit of such an argument but it may be noted that the language is not the same in each instance. The statute, after requiring in substance that an elector shall sign his name, provides only that he shall *add* his place of residence. In the circumstances here presented we find no sufficient reason to show why such language would necessarily nullify an elector's valid signature to which his correct place of residence was added by another person if such addition was properly authorized and would not tend to confuse the identification of the elector.

It may be noted in passing that each elector apparently is not required to personally *add* his place of residence when he signs the permanent registration book and card

to qualify him for voting either in a primary or in elections. On the contrary in practical application he is considered to be qualified by signing his name and by authorizing and certifying the other information, including his place of residence, which has been added by a clerk or another person. The respondents' contention here would require the elector to do more personally as a signer of independent nomination papers than he does to qualify for voting by signing the permanent registration book and card.

In substance and effect, therefore, we conclude that where the signature is admittedly valid and the elector actually is registered from and lives at the place of residence as indicated, and where no fraud or misleading circumstance which might confuse the board in identifying the elector is shown, and where nothing appears to exclude the fact that the elector has authorized another to add such place of residence, a liberal construction of the provision under consideration would be in keeping with the intention of the legislature and the purpose of the language of the statute. So construed we think that the respondents, without more evidence than appears before us upon the agreed statement of facts, should not have disqualified the signatures here in question.

For that reason, in addition to granting the petitions relating to the names of candidates for mayor and police commissioner respectively, the petitions as they relate to candidates for alderman and councilmen in wards 1, 2 and 5 respectively are hereby granted; the petition relating to the nominations for similar candidates in ward 3, as hereinbefore stated, is considered to be waived or withdrawn; and the petition as it relates to such candidates in ward 4 is denied. On the assurance of the respondents that certifications would be made forthwith in accordance with our opinion, no further writ or order is necessary.

*Israel Rabinovitz,* for petitioners.

*John F. Doris,* City Solicitor of Woonsocket, *Irving I. Zimmerman,* Ass't City Solicitor, for respondents.